**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| ENRIQUE CAZAREZ, JR., | ) |
| Petitioner, | ) ) ) |
| vs. | ) Civil No. 08-00195-CV-W-FJG ) Crim. No. 04-0244-06-CR-W-FJG |
| UNITED STATES OF AMERICA, | ) ) |
| Respondent. | ) |

## **ORDER**

Currently pending before the Court is petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 (Doc. # 1).

### **I. BACKGROUND**

On July 16, 2004, a Complaint was issued as to Enrique Cazarez Jr. and a John Doe defendant alleging that they conspired to distribute methamphetamine in an amount of fifty grams or more. An Indictment was issued as to defendant Cazarez and forty other defendants on August 12, 2004. On June 22, 2005, a Superseding Indictment was filed against Cazarez and the forty other defendants. Cazarez was charged with Conspiracy to Distribute more than fifty grams of methamphetamine (Count 1) and Criminal Forfeiture (Count 11). On October 25, 2005, defendants Funes-Vargas and Cazarez proceeded to trial. On October 27, 2005, after two days of trial, Cazarez pled straight up, without a written plea agreement, to Count I only. During the Change of Plea, petitioner's counsel asked him:

Q. Do you agree that you agreed to make a purchase of methamphetamine and distribute more than 50 grams of methamphetamine in this case?

A. Yes.

(Transcript of Change of Plea Hearing, p. 8). No other factual basis for the plea was elicited from Cazarez and no other questions regarding the drug quantity were asked. The Court accepted Cazarez's change of plea and ordered a Pre-Sentence Investigation.

The Pre-Sentence Report ("PSR") stated that Cazarez was being held responsible for 9 ½ pounds (4.3 kilograms) of methamphetamine actual. This consisted of 8 pounds of methamphetamine actual seized from 568 Overton and 1 ½ pounds of methamphetamine actual seized from 5803 Perry.

During the February 23, 2006 sentencing, petitioner's counsel, Michael Gunter, objected to Cazarez's criminal history score, arguing that it was calculated incorrectly. The Court overruled the objection to the criminal history, but did grant Cazarez a two level reduction for acceptance of responsibility. The sentencing range was 235 to 293 months. The Court sentenced Cazarez to the low end of range, 235 months. No mention was made of drug quantity and Mr. Gunter did not object during the sentencing to the drug quantity that Cazarez was held responsible for.

Cazarez timely appealed his sentence. Mr. Gunter moved to withdraw and filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), arguing that the sentence was unreasonable. The Eighth Circuit found the sentence reasonable and affirmed the sentence. On March 14, 2008, Cazarez filed the instant 28 U.S.C. § 2255 action. In his initial § 2255 petition, Cazarez asserted that his counsel was ineffective for failing to object to the PSR because Cazarez did not agree that he should have received a two point enhancement for his role as a manager or

2

supervisor.  Cazarez also argued that his counsel should have objected to his criminal history representation, as he believes it was overstated.  He also argues that his counsel should have assisted him at the appeal stage by furnishing him relevant transcripts and documents.

The Government responded to Cazarez's § 2255 and on April 28, 2008, Cazarez filed a reply to the Government's response to his § 2255.  In the reply, Cazarez raised an issue which he had not raised in his initial motion - that his counsel was ineffective for failing to object to the drug quantity in the PSR.  Cazarez argues that during the Change of Plea hearing, he admitted to only distributing more than 50 grams of methamphetamine, which would result in a Base Offense Level of 32.  He argues that he never admitted to distributing more than this amount.  The Court asked the Government to file a Surreply addressing this issue.

In their Surreply, the Government argues that the evidence supporting the drug quantity in the PSR was introduced at trial, prior to Cazarez's entering his guilty plea.  The Government also argues that Cazarez has failed to show that any objection to the drug quantity would have resulted in a lesser sentence.

On March 2, 2009, the Court held an evidentiary hearing on this claim.  Cazarez testified during the hearing that he told his counsel that he disagreed with the amount of drugs that were attributed to him in the PSR.  When his counsel did not make an objection during the sentencing, Cazarez testified that Mr. Gunter told him that they were going to save that argument for the appeal.  Mr. Gunter testified that he did not recall Cazarez telling him anything about drug quantity.  When he was asked if Cazarez ever told him that he wanted to specifically object to the quantity of drugs in the amount

3

of 8 ½ to 9 pounds, Mr. Gunter replied: "I don't recall whether he did. I don't believe he did, but I can't recall." When Mr. Gunter was asked if he ever told Cazarez that he would file a motion on his behalf objecting to the quantity of drugs, Mr. Gunter replied: "No, I never told him I would." When asked why he had not objected to the drug quantity attributable to Cazarez, Mr. Gunter replied: "I really – I didn't have a good faith belief that anything was less than as it was stated in the PSR. Those two days of trial were pretty brutal as far as the amount of grams, the sale transactions, the phone conversations that were being introduced, and the government's discovery that I was presented, in my opinion, established that amount of grams that was in the PSR."

## II. STANDARD

To prevail on a claim of ineffective assistance of counsel, a movant must show that the attorney's performance fell below an objective standard of reasonableness and that the performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The Court is to adopt an extremely deferential approach in evaluating counsel's performance. 466 U.S. at 689, 104 S.Ct. at 2065-66. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Additionally, to establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068.

In United States v. Villareal-Amarillas, 454 F.3d 925 (8th Cir. 2006), cert. denied, 549 U.S. 1137 (2007), the Court stated:

> In this case, the relevant drug quantity was a disputed issue, and the

4

> district court had an obligation under Rule 32(i)(3)(B) to make specific factual findings supporting its ruling on the disputed matter, unless the matter would not affect sentencing or would not be considered in sentencing. Here, the disputed matter - the relevant drug quantity- absolutely would affect sentencing because the relevant drug quantity determines the Guidelines base offense level.

Id. at 930. Similarly, in Johnson v. United States, No. 05-1282-CV-W-GAF, 2006 WL 1382326, *4 (W.D. Mo. May 16, 2006), the Court stated, "[c]ounsel's decision not to challenge the quantity of drugs attributable to a defendant cannot prejudice a defendant unless the result of the sentencing hearing would have been different had the objection been made and sustained."

### III. DISCUSSION

Mr. Gunter testified at the evidentiary hearing that he did not object during the sentencing, because he thought the evidence supported the quantity of drugs which were being attributed to Cazarez. Although there may have been conversations between Cazarez and Mr. Gunter regarding this or whether the drug quantity was revealed in discovery, or through conversations with the prosecutor or other attorneys, the 9 ½ pounds of methamphetamine attributed to Cazarez is not supported in the trial transcript or the record. The trial transcript includes the testimony of only one witness who testified that he purchased "about one pound six ounces" from Cazarez. There is no other testimony that ties Cazarez to 9 ½ pounds of methamphetamine. Additionally, during the change of plea hearing on October 27, 2005, Mr. Gunter asked Cazarez if he agreed to purchase and distribute more than 50 grams of methamphetamine in this case. Cazarez responded affirmatively, but no other testimony was elicited as to exactly what quantity Cazarez agreed to purchase and distribute. Also, in the PSR

5

report, a statement is made that nine and one-half pounds are being attributed to Cazarez, but there is no explanation as to how this amount is arrived at. Additionally, during the sentencing hearing there was no discussion as to drug quantity.

If Mr. Gunter had challenged the drug quantity, the Court would have been required to make a specific factual finding regarding the quantity of drugs attributable to Cazarez. In United States v. Barajas-Ramirez, No. 97-CR-124(18)(JMR/AJB), 2007 WL 333165 (D.Minn., Feb.1, 2007), the Court stated:

> Under the Federal Sentencing Guidelines, a defendant's base offense level in a drug conspiracy case is based on the drug quantity, which includes 'all transactions engaged in by [the defendant] or by [her] coconspirators . . . if the transactions were either known to [her] or reasonably foreseeable to [her]. United States v. Negron, 967 F.2d 68, 72 (7th Cir. 1992). The sentencing court is 'required to find by a preponderance of the evidence that the activity involving those drugs was in furtherance of the conspiracy.' United States v. Mickelson, 378 F.3d 810, 822 (8th Cir. 2004).

Id. at *2.

In the instant case, petitioner's counsel did not object to the drug quantity that was attributed to petitioner, 4.3 kilograms of methamphetamine actual. This drug quantity puts petitioner at a Base Offense Level of 38 (1.5 KG or more of Methamphetamine (actual)). However, the Court gave Cazarez a two point reduction, which brought him down to a Base Offense Level of 36. With a criminal history category of 3, this put him in the range of 235 - 293 months.

However, if Mr. Gunter had made an objection to the drug quantity in the PSR, then the Court would have been required to make a determination as to the specific quantity of drugs that were attributable to petitioner, or that were reasonably foreseeable to him. Based on a review of the transcript, and the testimony of a witness

6

who said he purchased drugs from petitioner, the amount which can reasonably be attributable to petitioner is 1 lb. 6 oz. of methamphetamine. This converts to 623.7 grams. This would equate to a Base Offense Level of 36 ("At least 500 G but less than 1.5 KG of Methamphetamine (actual)"). Assuming the same two level reduction for acceptance of responsibility, this would result in a Base Offense Level of 34. With petitioner's criminal history category, this would yield a sentencing range of 188-235. Assuming again that the Court would sentence at the low end of the spectrum, this could possibly result in a sentence of 188 months or almost four years less than the sentence Cazarez received.

The Court recognizes the Government's argument that Cazarez should be held responsible for the entire 9 ½ pounds because this was a conspiracy. In a conspiracy however,

> mere knowledge of another's activity is not enough to show liability under U.S.S.G. § 1 B 1.3. Rather, 'the central concept . . . is foreseeability.' United States v. O'Campo, 973 F.2d 1015, 1023 (1st Cir. 1992). The defendant is only responsible for foreseeable conduct within the scope of his own explicit or implicit agreement. See e.g. United States v. Carrozza, 4 F.3d 70, 76 (1st Cir. 1993)("So as to keep the criminal responsibility within bounds, *§1B1.3 requires sentencing courts to ascertain on an individual basis the scope of the criminal activity that the particular defendant agreed jointly to undertake."*); United States v. Innamorati, 996 F.2d 456,488-89 (1st Cir.1993)("[E]ach member of a drug conspiracy may be held accountable at sentencing for a different quantity of narcotics, depending on the circumstances of each defendant's involvement.").

Vongkaysone v. United States, No. 04-43-P-S, 2007 WL 844620, *8 (D.Me. Mar. 19, 2007)(emphasis added). So, even though Cazarez was involved in a conspiracy, it does not necessarily follow that he should be held responsible for the entire amount of the drugs that were seized. If Mr. Gunter had objected to the drug quantity in the PSR,

7

then an individualized finding would have been required. If he had been found responsible for a lesser amount of methamphetamine, there is a reasonable possibility that he would have received a shorter sentence. So, in this sense, Cazarez has satisfied the two prongs of the Strickland test, he has shown that his counsel's performance fell below an objectively reasonable standard and he has shown that he was prejudiced as a result.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** Cazarez's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 (Doc. # 1). The Court hereby requests that the parties provide an estimate of the length of time they feel will be necessary for the resentencing hearing and also how much time they need to prepare for the hearing. The parties shall file their responses with the Court on or before **March 23, 2009**.

Date: 3/13/09
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge